The case for argument is 20-1662, Visa v. Universal Secure Registry. This is Mr. Argenti. Whenever you're ready. May it please the Court. Matt Argenti on behalf of Appellants Visa and Apple. The Board's rejection of our IPR Obviousness Challenge rests on a single limitation of the claims, what we call Element 1.6, which requires that account-identifying information is not sent to the provider, such as a merchant, but is sent to a third party to enable or deny the transaction. We show that the Brenner Prior Art Reference discloses this in two ways, the same two ways disclosed and claimed in the 539 patent. First, Brenner describes sending account-identifying information to a third-party shipper to allow delivery without disclosing... I'll continue. All right. Thank you. First, Brenner describes sending account-identifying information to a third-party shipper to allow delivery... without disclosing the customer's address to the merchant. Second, Brenner discloses sending account-identifying information to a third-party bank... to verify the customer has sufficient funds for the purchase... without providing account information to the merchant. Either one of those on its own satisfies the claim. The board was only able to reject both showings by committing numerous errors. With respect to the shipping aspect of Brenner, the board erred in construing the claims to exclude third-party shippers... and narrowly require financial approval as the claimed enabling of the transaction. That's completely at odds with Dependent Claims 4 and 25 that recite that the transaction includes delivery. Can you clarify, at least from my thinking, this shipper theory that we're talking about? I mean, the language was whether the shipper could enable or deny the transaction, right? That's what the query is? Correct. And maybe I agree with you that a shipper can refuse to ship something. But it's not clear to me why it necessarily follows that their refusal to ship something... equates with denying the transaction. Is there any evidence that the entity and the provider just give up their approved transaction... merely because one shipping company decides not to provide shipping services? Can't they just find another shipper? Well, first it's important to note that our position is... denial of the transaction is not a required aspect of the claims... provided the third party enables the transaction. The terms are presented in the alternative. And as long as the third party provides one or the other of those aspects of the claim... the enabling or the denying, then the claim is satisfied. So a shipper doesn't have to deny the transaction. Okay, I appreciate that. But let's assume we disagree with you on that. So is there a response to the denial portion of this? Sure, yeah. The denial is satisfied by a shipper refusing to provide the shipment service... that would complete the transaction. And whether the merchant could turn to an alternative source of shipment... is no different than whether a customer could turn to an alternative source of funds... if a bank says, oh, you don't have enough funds in this account. That's really outside the scope of the claims and what's described in the specification... where both describe that there's just one bank involved, there's just one shipper involved in these transactions. Where in the spec are you referring to about the one shipper? Well, it's in the embodiments. I don't think there's... Is this column 14, the figure 11 embodiment, is that what you're referring to? That's correct. Figure 10 and figure 11 both describe the anonymous shipping aspect. Figure 10 is in conjunction with a purchase, whereas figure 11 is just more generally referring to anonymous shipping. And neither one of those describes multiple shippers or turning to an alternative... just like the figure 7 embodiment doesn't describe turning to an alternative bank for another source of funds. So I want to get back to the board's error with respect to enabling the transaction. As I mentioned, that's at odds with dependent claims 4 and 25... where claim 4 recites that the secure registry system obtains the customer's address for delivery of the item by the third party. So in view of this, the board's determination that a shipping carrier cannot be the third party recited in the claims is indefensible. And then it's similarly at odds with the specification. As I just referred, figure 10 and the corresponding written description describe a method of conducting a transaction with a merchant... without requiring the user to provide to the merchant the user's name, address, or other identifying information... while enabling the merchant to ship the goods to the user. So that's exactly what we see in Brenner. And I would also point out that in column 3 of the 539 patent at A57... the 539 patent describes that its purported invention facilitates multiple new forms of transactions... including enabling anonymous identification that will enable the person to receive mail and other items... without providing the recipient's address information to the sender. And that's separate and apart from any financial approval purchase transaction. That's simply about the shipping. And the 539 patent makes it clear that that's one of the disclosed and contemplated embodiments... is the anonymous shipping that's the same as what's in Brenner. So there was simply no basis for the board to conclude that the independent claims are limited to financial approval... and exclude a third party shipper. Once you get past that, even patent owner's own expert had to agree that a shipping carrier enables a transaction... if the term enable is not limited to financial approval. And that's at A2796 where he testified that the shipping carrier received account identifying information... in order to enable the shipping of the merchandise to the purchaser. Now, as I mentioned previously... I don't have that testimony in front of me. Those words are somewhat different. Enabling the shipping might not be a concession that's enabling the transaction with the merchant. Well, but Claim 4 clears that up because the shipping is part of the transaction. The shipping is a service that is provided as part of the transaction. And the delivery is achieved by a third party shipper. So we see that from the dependent claims. So once we have the understanding that the shipment is part of the transaction... the claims require that, at least the dependent claims. So the independent claims have to encompass that scope. Then there's really no way to distinguish from what Brenner's talking about with its anonymous shipment. Now, I want to briefly touch on the board's other error in construing the enable or deny term... where they interpreted the terms to require a binary choice to enable or deny the transaction... rather than finding the claim satisfied by simply performing one or the other. This perhaps flowed from the board's interpretation that mistakenly equated enabling with approving. But in truth, nothing in the claim recites making such a choice. And the claim is satisfied by performing either alternative. And then, even if the court finds no fault in that aspect of the board's decision... the board is tired in finding Brenner's shipper cannot deny the transaction... because, as we discussed, USR's own expert testified that, of course, a shipper can refuse to complete a shipment. And the board's finding that it was speculative whether that could happen in Brenner... ignores that evidence, unrebutted evidence, by patent owner's own expert... that that's how a person of ordinary skill in the art would understand that shippers operate. So that was error. So for these reasons, numerous reasons, the board erred in concluding... that Brenner's shipping disclosure cannot satisfy claim element 1.6. Now, turning to the banking disclosure in Brenner... here the board erred both by misinterpreting the reference... and by refusing to consider an alternative obviousness theory that was properly raised during the IPR. First, we showed that Brenner discloses sending account identifying information to a bank... in the form of linking information... which provides the ability to determine the customer identity and account number. The board didn't take issue with the mapping of the linking information to the claimed account identifying information... but rather found a purported inconsistency between our mappings to limitations 1.3 and 1.6. In doing so, the board concluded on its own that it doesn't make sense... That wasn't an issue that USR had raised. The board reached its conclusion on its own in the final written decision. But it's refuted by the reference itself. It makes perfect sense for the secure provider to use the linking information... to look up, for example, shipping information to provide to a shipper... and for the bank to also use the linking information... after receiving it from the secure provider to look up the customer's account number. And that's exactly what Brenner discloses. For example, at A2503 through A2505. We cited that in the petition, for example, at A31. The board's conclusion to the contrary has no evidentiary support. Finally, we presented an alternative theory that the bank in Brenner satisfies element 1.6... the customer's actual account number from the secure provider... as opposed to the linking information. The board abused its discretion in refusing to consider this argument. The board faulted us for not raising the argument in the petition, but that was incorrect. In the petition, for limitation 1.6, we asserted that Brenner's secure provider... sends customer information to the bank, such as a name or address. That's at A109. Moreover, we provided the exact mapping at issue... with respect to, for example, claims 16 and 18... dependent claims that require that the account identifying information... recited in claim 1 is an account number. That's found in our petition at A123 through A125... citing Brenner 1028 through 1110... which is A2511 through A2512... as teaching that the secure provider stores the account number... to provide to the bank computer. The argument and evidence were there in the petition from day one. Moreover... I'm sorry. Finish your sentence. I apologize. This is Judge Proust. Finish what you were going to say. I was just going to say, moreover, even if this is somehow considered new argument... decisions of this court, such as Apple v. Andrea Electronics... show that it was error for the board to refuse to consider it... when we raised it... when it was in response to arguments that came up during the IPR... and they didn't rely on any new evidence. The evidence was cited in the petition. I don't want to... This is Judge Proust. I don't want to cut in too much into your rebuttal... but I don't know if you were listening to the Apple case that preceded this... the argument in that case. Yes, Your Honor. But we asked about the relationship between this case... and the 101 district court appeal that was heard earlier this week. Do you have a view on that? Is your view contrary to what the other side... the parties in the other case seem to agree? No, it's... Go ahead. I do not have a contrary view. I would agree that if the district court 101 decision is affirmed... and becomes a final judgment, then that would moot our IPR appeal. Okay. Thank you. We'll restore your rebuttal time... and let's turn to Mr. Matthews again. Mr. Matthews? That's not the second time I've done that. I'm sorry, Your Honor. May it please the court, I had forgotten to take my mute off. We all do that. The board's determination that appellants failed to prove... unpatentability of any of the claims... based on the combination of Brenner, Weiss, and Desai... is supported by substantial evidence and not contrary to law. The dispute involves essentially two limitations, claim 1.3... and limitation 1.6, which also appear in some form... in the other three independent claims, 22, 37, and 38. And 1.6 requires that account identifying information... which is the customer's personal information... must be provided to a third party to enable or deny... the transaction with the provider. In connection with the question that Judge Prost raised... about refusal to ship and whether that was equivalent... or could be equivalent to denying the transaction... we, of course, take the position, as the board did... that deciding to not ship is not the same... as denying the transaction with the provider. The claim is directed to a transaction with a provider... and the board determined correctly that... a couple of things. Number one, that there's no disclosure of Brenner's shipping carrier... denying the transaction. The board found that the appellant's argument... that Brenner's shipping carrier could refuse to provide shipping... were speculative and not based on Brenner's disclosure. But in addition... Well, Mr. Matthews, this is Judge Prost. Let me just ask you about that... because the difficulty I'm having is that... the use of the terms enable and deny... are not used in the specification... in the way you'd have us use it here. You say enable means approve... and denial means terminate. But why didn't the claim use those words then? I can't speak to why the patent attorney... used the particular words in the claim. I can speak to the fact that figures 8, 9, and 10... discuss the transaction of the 839... I'm sorry, the 539 patent at appendix 49 through 51... disclose the steps of the transaction... where a merchant, a provider, and a USR... and a third-party credit card company are all included. And there it talks about, as you can see, for example, in figure 10... you notify the USR, the credit card company notifies the USR... as a result of the transaction... and it's either declined or accepted. And that is how it was disclosed and discussed in the patent. I can't speak to why enable or deny was used to the claim. I can say that the board didn't have any difficulty understanding... that enabling or denying the transaction... means that the third party is presented with the binary choice... of enabling or denying the transaction... and that the board also concluded that Brenner did not disclose... a shipper who had the power to deny the transaction. Certainly you could imagine, one could imagine... that a shipper could be given that power. For example, if the credit card company were making a decision... as to whether or not to ship a new credit card... and needed to evaluate the account identifying information... that was sent to the credit card company... they would be the shipper and the third party. But to the extent that figure 11 doesn't disclose a transaction... that independent claims of the 539 is meant to cover... or that anybody has argued is meant to read on... and if you look at figure 10... you can see where the board's conclusion comes from... that the shipper, when the shipper is involved... is only involved after the conclusion of the transaction. In other words, the shipper only becomes involved... after the credit card company has decided to approve the transaction. And that's the third party in that transaction... the credit card company, not the shipper. With respect to the arguments about claim 4... somehow redefining the claim... such that a shipper would be the controlling party... and moreover, that renter-shipper would anticipate the claim. First, it's important to note that... appellants never relied on Dependent Claim 4... but rather only discussed Dependent Claim 25... in view of their claim differentiation argument. That's seen in Appendix 356. Second, the Dependent Claims 4 and 25... simply specify an optional additional delivery component... to a service provided by the provider. Again, this is the transaction with the provider. These claims do not, as appellants attempt to argue... require that the third party residing in Claim 1 be the shipper... or require that the actual shipping entity be the shipper... to enable or deny the transaction with the provider. And third, even if the claims third party... were defined as the shipper in Claim 4... and we don't believe that to be the case... that just means that the shipper might be able to enable... or deny the transaction in addition to shipping the item. Brenner's third party shipping carrier has no capacity... to enable or deny the transaction with the provider... because it is not involved until after the transaction. That's shown in Appendix 2511 at Column 10, Lines 3 through 4... which reads, once a purchase by the customer has been approved... the vendor arranges for the package to be picked up... by the third party carrier. And again in Appendix 2515... that's Column 14, Lines 20 through 22 of Brenner... which reads, upon approval of the transaction... the vendor readies the goods for anonymous shipment. In addition, Dr. Jacobson did not admit... that shippers could refuse to provide service. He explained that shippers could theoretically refuse... to provide shipping for a number of reasons... but not in a way that would satisfy Limitation 1.6. If you look at Appendix 2796, which is page 67 of his testimony... he says, so it's their job to send it. UPS or U.S. Postal Service would not determine... whether this should be done or not. Of course, they could refuse to provide service... or lose the package or whatever. But that is a failure for them to carry out their part of it. That is not an aspect of approving or denying the transaction. And then again at Appendix 2797 to 2798... he says that the shipper might not be able... to legally ship wine, for example, to certain countries. But Brenner doesn't disclose this. And critically, Dr. Jacobson also testified... that the approving or denying is performed... before the shipper gets involved. That's in Appendix 2796. And that is, in fact, what the Board found here. Can I just ask you, and I don't know if this makes any sense... I mean, are we talking about something akin to creating a contract? Namely, the transaction between merchant and customer. The transaction and the enabling or denying of it... is the positive or negative decision about entry into the contract... whereas whatever the shipper is doing... might be part of the fulfillment of the contract... but not into the entry or non-entry. I think, Your Honors, I don't know if I would word it exactly that way... with regards to a contract, but it certainly has to do with... there are separate parties, the provider, the shipper, and the third party. The shipper is not mentioned in the claim, of course. And here, the third party has to be able to enable or deny... the transaction with the provider. So, yes, in some sense, when I go to Target and try to buy something... at some level, the third party credit card company... has to approve or deny that transaction. And that is the transaction that I'm trying to conduct with Target. So, is that a contractual arrangement? I wouldn't make it that narrow, but it's certainly a transaction... as the entity and the merchant, and not specifically me and the third party. I don't know if that addresses your question. No, I was just trying to think of... there's something intuitively distinct about the entry into an agreement... and the actions that a variety of people might have to take... in order for the agreement to be fulfilled. And some of those might involve people other than the merchant and the customer. But the claim, I kind of take the board's view and your view... to be that the claim about enabling or denying the transaction... is enabling or denying the creation of a binding relationship... between the merchant and the customer. Things that might be necessary for both sides of that agreement... to do what they need to do under it... are not part of the enabling or denying of the transaction. I think that's right. And to the extent that fulfillment after the transaction has been approved... fulfillment may be subsequent steps that need to be carried out... to make sure that the transaction is completed... is separate from enabling or denying... the approval of that transaction. There are a few steps that we haven't talked about today... that Claim 1, for example, requires... which is making sure at first that the provider has the ability... has the rights to access the secure data that's stored at the registry... that is necessary to complete the transaction. So there's a few steps that need to be handled carefully... with respect to this claim... to make sure that that transaction is handled appropriately. And so I think Rihanna is correct in that point. With the time I have left... I'd like to discuss the third-party bank disclosure... moved from the shipping carrier disclosure. The board found... the board did find that there was inconsistencies... and the first time this became apparent... was not when the final written decision was issued... but was actually at the hearing. At Appendix 668 to 670... the board asked the appellants at the hearing... if you're relying on a Brenner embodiment... where the linking table is stored at the secured provider... so it can satisfy the mapping requirement for Limitation 1.3... the judge asked, why would the secured provider... send the linking information to the bank? The board told appellants that their mapping of Brenner... makes two different embodiments of Brenner. And at the hearing, the appellants agreed... that Brenner didn't explicitly disclose this particular combination... but argued that it didn't exclude the possibility. Now, it's an understatement to say that... Brenner doesn't disclose that combination. In fact, it goes out of its way... at Appendix 2511 and 2512 and again at 2509... to say that you store it one place... at the secured registry, the linking information... or you store it at another place. Let's recall that the linking information... let me take another step back... let's recall that in Brenner... a customer sets up with the secured provider... a customer object. This is an anonymous object that they can use then online... to interact with vendors. And so I don't have to give any of my personal information... I just give them the customer object... and the vendor knows the customer object... but doesn't know any of the personal information. Brenner discloses, well... when the vendor wants to complete that transaction... they can either contact the secured provider... give them the customer object... and the secured provider can look up the personal information... or you can send that customer object directly to the bank... and the bank will have the linking information in that instance. And what the board determined was... it doesn't make any sense to have it in both places. It's inefficient and Brenner doesn't disclose that at all. And Brenner leaves no doubt that the linking operation... is performed only once... either at the secured provider or at the bank computer... but not at both locations. And on that basis, the board found that... appellants failed to support their mapping. There was no explicit disclosure in Brenner... of an embodiment where the linking information... is stored at both places. And there's an explicit disclosure not to do that. And the board found that using it at both places... would not make sense. That's at Appendix 12. And there's no objective evidence or explanation... to support this modification of Brenner's teaching... so the board's concluded correctly that... this creates a significant inconsistency... between the mappings of Limitation 1.3 and 1.6. And that conclusion is supported by substantial evidence. And then with respect to the alternate mapping... it is true... our view is that... the appellants raised this mapping at the hearing. And the board would be justified in disregarding it... in the hearing alone. The appellants did not explicitly... in the petition... name this mapping... or include this mapping for any independent claims. They admitted, well, we didn't do it... for any of the independent claims. But we did it for three dependent claims. They claimed 5, 16, and 26. And the court looked at those disclosures... and said, you know what? This doesn't put anyone on notice... that, in fact, you were intending to rely on that... particular disclosure... that Brenner would send account information... directly to the bank... have a secure provider send it directly to the bank. And, in fact, when we look at... your discussion... it looks like you're not... you're still relying on it... where an embodiment... where the linking table is at both locations. Your reply confirmed that. Your general discussion... petition at Appendix 18... they discussed the petition... talks about the secure provider... mapping the customer object... to the account identifying information... but doesn't discuss the secure provider... sending the information to the third-party bank. And so, in the end, they felt that... while they didn't exclude it... as being necessarily new... what they said was... it's just not there. It's not in the petition at all. And so they correctly declined... to find the petition adequately raised... in this alternative mapping. We ask that the... court determine... and affirm the board's determination... that appellants failed to prove... unpatentability of any of the claims... based on the asserted combination. Thank you. Thank you. Counsel, rebuttal? Thank you, Your Honor. It's important to remember... with respect to the shipping embodiment of Brenner... that broadest reasonable interpretation... is the claim construction standard... so there was a question to Mr. Matthews... about whether enable means approve... and whether deny means terminate. There's no support... in the specification... for those interpretations... nor is it the broadest reasonable interpretation... of the terms enable or deny. USR urges the court... to ignore the plain language... of the dependent claims... and interpret the third-party... as limited to a financial entity... such as a bank. But they can't point to any disclosure... in their patent of a bank... that provides financial approval... and also provides the delivery... recited in the dependent claims... nor would that make any sense. With respect to the linking aspect... of Brenner... the banking embodiment... we made no such concession... that Mr. Matthews asserted... at the oral argument... in front of the board... that the secure provider and bank... are not both disclosed... as using the linking embodiment... in a single... sorry, the linking information... in a single embodiment. It's important to remember... that this issue was not disputed... by the parties... nor was it argued in the briefing. At the hearing... we understood the board line of questioning... to refer to using the linking information... to look up the customer's account number... specifically. And I would refer the court... to A668 through A669... for that. Nothing in our responses to the board... conceded that the secure provider and bank... would not both use the linking information... for separate purposes. And in fact, it was undisputed... until the final written decision... that the secure provider... uses the linking information... to obtain the customer's address... to send to the shipper... and also sends the linking information... to the bank... to look up the customer's bank account information... as described, for example, in Brenner... at 219 through 42... that's A2503... through 2505... cited, for example, in our petition... with respect to limitation 1.3. Thank you. Thank you. We thank both sides... and the case is submitted.